# IN THE COURT OF APPEALS OF IOWA

No. 3-1179 / 13-0879
Filed June 25, 2014

**FORT DODGE COMMUNITY
SCHOOL DISTRICT,**
     Petitioner-Appellant,

**vs.**

**IOWA PUBLIC EMPLOYMENT
RELATIONS BOARD,**
     Respondent-Appellee,

**and**

**FORT DODGE EDUCATION ASSOCIATION,
FORT DODGE MAINTENANCE EMPLOYEES
BARGAINING UNIT (BUS DRIVERS),
FORT DODGE EDUCATION ASSOCIATION
(ASSOCIATES), FORT DODGE SECRETARIAL/
CLERICAL EDUCATION ASSOCIATION,
FORT DODGE MAINTENANCE EMPLOYEES
BARGAINING UNIT (BLUE COLLAR),**
     Intervenors-Appellees.
_____

     Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.


     A school district appeals from the district court ruling affirming the decision of the Iowa Public Employment Relations Board. **AFFIRMED.**


     Andrew J. Bracken of Ahlers & Cooney, P.C., Des Moines, for appellant.

     Diana S. Machir of Iowa Public Employment Relations Board, Des Moines, for respondent appellee.

Gerald L. Hammond of Iowa State Education Association, Des Moines, for intervenors-appellees.

Heard by Vogel, P.J., and Tabor and McDonald, JJ.

**MCDONALD, J.**

The Fort Dodge Community School District ("the District") appeals the district court's ruling affirming the Iowa Public Employment Relations Board's ("PERB") ruling in a negotiability dispute arising under the Iowa Public Employment Relations Act ("PERA" or "the Act"), Iowa Code chapter 20 (2011). The subject of the dispute is whether the District's proposal to eliminate severance pay provisions from several collective bargaining agreements ("CBAs") is a topic of mandatory or permissive bargaining under the Act.

I.

The District is a public employer within the meaning of PERA. *See* Iowa Code § 20.3(10) (defining "public employer"). The district has five employee units organized for the purposes of collective bargaining under the Act.[1] *See* Iowa Code § 20.3(4) (defining "employee organizations"). The labor negotiations between the District and the employee organizations are thus subject to PERA. The supreme court recently summarized the collective bargaining process under PERA:

> PERA governs collective bargaining between public employers and public employee organizations. Iowa's PERA contains both a provision establishing mandatory collective bargaining on specified matters and a contrapuntal management rights clause preserving exclusive, public management powers in traditional areas. The public management powers are found in

---

[1] The certified collective bargaining representatives for the five bargaining units are as follows: Fort Dodge Education Association; Fort Dodge Maintenance Employees Bargaining Unit (Bus Drivers); Fort Dodge Education Association (Associates); Fort Dodge Secretarial/Clerical Education Association; and the Fort Dodge Maintenance Employees Bargaining Unit (Blue Collar). The employee units and their certified collective bargaining representatives shall hereinafter be referred to collectively as "the employee organizations."

Iowa Code section 20.7. . . . Iowa Code section 20.9 then enumerates seventeen topics that are subject to mandatory collective bargaining procedures:

> The public employer and the employee organization shall meet at reasonable times . . . to negotiate in good faith with respect to wages, hours, vacations, insurance, holidays, leaves of absence, shift differentials, overtime compensation, supplemental pay, seniority, transfer procedures, job classifications, health and safety matters, evaluation procedures, procedures for staff reduction, in-service training and other matters mutually agreed upon.

Iowa Code § 20.9. This list is exclusive.

The classification of a bargaining proposal as either mandatory or permissive is a critical issue.

> If a subject is within the scope of mandatory bargaining, the parties are required to bargain over the issue, and if agreement is not reached, the statutory impasse procedures, which ultimately lead to binding arbitration, are available. If, on the other hand, the proposal is a permissive subject of bargaining under section 20.9, the public employer may reserve the right to decide the issue unilaterally by declining to participate in bargaining. When the employer declines to bargain over a permissive subject, the impasse procedures in PERA are not available and decisions related to the subject remain within the exclusive power of the public employer.

*AFSCME Iowa Council 61 v. Iowa Pub. Emp't Relations Bd.*, ___ N.W.2d ___, ___, 2014 WL 1884476, at *5 (Iowa May 9, 2014) (citations, internal quotations, and internal emphasis omitted).

The district and each of the employee organizations have entered into collective bargaining agreements. Each agreement between the District and the respective employee organization contains a provision relating to the payment of severance upon termination of employment. By way of example, the collective bargaining agreement with the Teachers provides, in part, as follows:

Article XII Wages
I. After ten (10) or more years of service, severance pay shall be promptly made to each employee in an amount equivalent to fifty (50%) of the per diem pay of the employee's beginning base salary in the year of separation from the District and shall be equivalent to all unused sick leave days (not to exceed 120) which the individual had accumulated but did not use during employment with the District.

The severance pay provisions are not uniform across the five agreements, containing differences regarding, among other things, an employee's eligibility for severance pay and the calculation of the amount of severance pay owed an eligible employee. The differences between and among the agreements are not material to this appeal.

In 2012, the District and the employee organizations were negotiating renewal of their respective CBAs. During negotiations, the District proposed eliminating the severance pay provision from each of the CBAs. The District took the position that the proposal was not a subject of mandatory bargaining. The employee organizations took the contrary position, contending severance pay fell within the meaning of "supplemental pay" and was thus a mandatory topic of bargaining under Iowa Code section 20.9.

The District petitioned PERB for a ruling on negotiability. PERB held that the proposals fell within the definition of "supplemental pay" within the meaning of section 20.9 and were thus subjects of mandatory bargaining. In reaching that conclusion, PERB first defined "supplemental pay" as "a payment of money or other thing of value that is in addition to compensation received under another section 20.9 topic and is related to the employment relationship." Applying the proposals to that definition, PERB reasoned that the severance pay proposals

related to cash payment not otherwise covered under section 20.9 and that the proposals were related to the employment relationship. Specifically, PERB reasoned the proposals were related to the employment relationship because severance pay is paid on termination; is conditioned on length of service; is calculated based on unused, accumulated sick leave; and was used to incent employees to remain employed in the school district.

In a thorough and well-reasoned ruling, the district court affirmed PERB's ruling. The court began its analysis by setting forth the correct legal standard:

> First, the burden is on the District to establish the invalidity of PERB's interpretation. Second, the Court must give deference to PERB's interpretation of section 20.9 and will only reverse if PERB acted irrationally, illogically, or wholly unjustifiably. These are heavy burdens for the District to overcome. On these principles alone, the Court concludes the agency's decision should be affirmed.

The court then addressed each of the District's arguments and found them unavailing. This appeal timely followed.

II.

> Judicial review of an agency ruling is governed by [the Iowa Administrative Procedure Act, Iowa Code chapter 17A]. The district court reviews the agency's decision in an appellate capacity. In turn, we review the district court's decision to determine whether it correctly applied the law. We must apply the standards set forth [in the IAPA] and determine whether our application of those standards produces the same result as reached by the district court.

*AFSCME Iowa Council 61*, 2014 WL 1884476, at *3 (citations and internal quotation marks omitted). If so, we affirm the judgment of the district court.

Where, as here, the question presented is whether the agency correctly interpreted statutory text, the level of scrutiny applied during review of the

agency's action depends on whether the legislature has vested the agency with interpretive authority. In *Waterloo Education Association v. Iowa Public Employment Relations Board*, 740 N.W.2d 418, 420 (Iowa 2007) ("*Waterloo II*"), the supreme court held that such authority had not been vested in PERB. In apparent response to that decision, the General Assembly amended the Act and explicitly granted PERB the authority to "interpret, apply, and administer" the provisions of chapter 20. *See* Iowa Code § 20.6(1). "Because the legislature has now expressly vested PERB with discretion to interpret and apply chapter 20, we will review PERB's interpretation and application of section 20.9 to determine if it is "irrational, illogical, or wholly unjustifiable." *AFSCME Iowa Council 61*, 2014 WL 1884476, at *3 (quoting Iowa Code § 17A.19(10)(*l*), (m)).

> A decision is "irrational" when it is "not governed by or according to reason." Webster's Third New International Dictionary 1195. A decision is "illogical" when it is "contrary to or devoid of logic." *Id.* at 1127. A decision is "unjustifiable" when it has no foundation in fact or reason. *See id.* at 2502 (defining "unjustifiable" as "lacking in . . . justice"); *id.* at 1228 (defining "justice" as "the quality or characteristic of being just, impartial or fair"); *id.* (defining "just" as "conforming to fact and reason").

*Id.* "The burden of demonstrating . . . the invalidity of agency action is on the party asserting invalidity." *Id.* (quoting Iowa Code § 17A.19(8)(a)).

### III.

Prior to directly addressing the parties' arguments, it is necessary to provide some context. The District correctly notes that prior decisions of the supreme court and this court restrictively interpreted the terms in section 20.9. In *City of Fort Dodge v. Iowa Public Emp't Relations Bd.*, 275 N.W.2d 393, 396 (Iowa 1979), the court explained that it was not bound by PERB's interpretation

of PERA, reasoned that PERA should be interpreted strictly, and held a clothing allowance did not fall within the meaning of "wages" or "supplemental pay." Justice McCormick dissented, stating:

> I agree the legislature did not adopt the broad scope of mandatory bargaining provided in the NLRA. However, this does not automatically require that the terms in § 20.9 be given a narrow and restricted meaning. Instead I believe [section] 4.1(2) requires that these terms be given their ordinary meaning.

*City of Fort Dodge*, 275 N.W.2d at 399. Similarly, in *Charles City Community School District v. Iowa Public Emp't Relations Bd.*, 275 N.W.2d 766, 769 (Iowa 1979), the supreme court stated "we are not bound by Board interpretations of law and must make an independent determination of the meaning of the statute." The supreme court further concluded "from the legislative history of [section] 20.9 and the cogent policy arguments for distinguishing public and private sector bargaining that the Iowa legislative intent was to adopt a restrictive approach to interpreting the subjects listed in [section] 20.9." *Charles City*, 275 N.W.2d at 773. Justice McCormick, joined by Justices Uhlenhopp and Harris, dissented, contending there was nothing in the statute or legislative history compelling the conclusion that "the terms identifying mandatory subjects of bargaining should be given a narrow as opposed to ordinary meaning." *Id.* at 775.

Applying this restrictive interpretive overlay, our court has previously addressed the issues of whether reimbursement of accumulated, unused sick leave and severance pay are mandatory or permissive topics of bargaining. We held both topics fell outside the scope of section 20.9 and were thus not mandatory topics of bargaining:

The Association argues that reimbursement for unused sick leave falls within the terms "wages," "supplemental pay" and "leaves of absence" which are mandatory bargaining items under section 20.9. Several prior PERB decisions are cited as support that this payment is compensation. Decisions from other jurisdictions are also relied on. These are not persuasive. The PERB decisions were made before the supreme court determined that the specific listing in section 20.9 was to be restrictively applied. Other jurisdictions have statutes similar or identical to the NLRA, which we have already discussed contains broader language and is more inclusive.

In *Fort Dodge Community School District v. P.E.R.B.*, 319 N.W.2d 181, 183-84 (Iowa 1982), wages are defined as a specific sum or price paid by an employer in return for the employee's services, and supplemental pay is pay for extra services relative to the time, skill and nature of the services. The Fort Dodge case held cash incentives for early retirement pay are not wages or supplemental pay, and the rationale is controlling here. The proposal here calls for reimbursement of unused sick leave in a lump sum cash payment upon termination of employment. It is not directly related to services rendered or to the time, skill, and nature of additional services, but rather is a form of severance pay to be paid to any employee leaving his or her employment, whether due to retirement, lay-off, or any other reason. Under the proposal, the payment is triggered by the termination of the employment relationship, and not by the rendering of primary or additional services. While it may be argued employees perform a service by not taking sick leave, we believe this stretches the meaning of service and is not what the legislature intended.

. . . .

. . . The proposal is a permissive subject of bargaining.

. . . .

The Association argues this proposal [severance pay] is also mandatory under the categories, "wages" or "supplemental pay." Terms of this proposal would grant a payment to any employee severed from employment for any reason after five years of service. It is not a payment made for any actual services rendered. The circumstance which triggers the payment is the termination of employment, and not the performance of any primary or extra services. As with the sick leave reimbursement proposal, no extra service not already compensated is provided by the employee in order to obtain this benefit. The severance pay proposal is likewise a permissive subject of bargaining.

The Association makes several persuasive arguments regarding the public benefit, including discouraging absenteeism, rewarding those who do not use their sick leave and encouraging

continuity in the workforce, contending these desirable results should elevate the matters to the mandatory-bargaining category. Our courts have previously explained why more restrictive bargaining is necessary in the public employment sector. We are, therefore, unpersuaded by the public benefit argument because other public benefits are also to be considered.

*Prof'l Staff Ass'n of Area Educ. Agency 12 v. Pub. Emp't Relations Bd.*, 373 N.W.2d 516, 518-19 (Iowa Ct. App. 1985) (citations omitted).

There are two developments subsequent to these cases that are relevant here. First, in *Waterloo II*, the supreme court clearly articulated the analysis to be applied in determining whether a topic is a mandatory or permissive subject of bargaining:

> The first prong for determining whether a proposal is subject to collective bargaining, the threshold topics test, is ordinarily a definitional exercise, namely, a determination of whether a proposal fits within the scope of a specific term or terms listed by the legislature in section 20.9. Once that threshold test has been met, the next inquiry is whether the proposal is preempted or inconsistent with any provision of law. Ordinarily, this two-step process is the end of the matter. Only in unusual cases where the predominant topic of a proposal cannot be determined should a balancing-type analysis be employed to resolve the negotiability issue. *See Clinton Police Dep't Bargaining Unit v. Iowa Pub. Employment Relations Bd.*, 397 N.W.2d 764 (Iowa 1986) (hybrid proposal involving both safety and staffing subjects held to primarily relate to staffing and thus not subject to mandatory collective bargaining).

*Waterloo II*, 740 N.W.2d at 429. Significantly, the court also adopted Justice McCormick's position by rejecting the conclusion the terms in section 20.9 should be given a restrictive reading as opposed to their ordinary and common reading:

> The topics listed in Iowa Code section 20.9 cannot be defined in a fashion so expansive that the other specifically identified subjects of mandatory bargaining become redundant, nor are the topics subject to the narrowest possible interpretation. Consistent with legislative intent, PERB must give each topic in

section 20.9 its common and ordinary meaning within the structural parameters imposed by section 20.9.

*AFSCME Iowa Council 61*, 2014 WL 1884476, at *5 (citing *Waterloo II*).

The District contends the holdings of *City of Fort Dodge*, *Charles City*, and *Professional Staff Association* were unaffected by the supreme court's decision in *Waterloo II*. The district argues those cases "are still valid decisions and binding precedent on PERB." The District solely "relies on these precedents in maintaining that severance pay is not a mandatory topic of negotiation." The District's reliance is misplaced. Whatever precedential value those decisions had was largely undermined by *Waterloo II*'s rejection of the restrictive interpretive approach and adoption of the common and ordinary meaning approach. For example, in *City of Fort Dodge*, the majority applied the restrictive approach and concluded non-monetary compensation could not fall within the meaning of wages. The court did not consider the common and ordinary meaning of the term. Justice McCormick on the other hand had no difficulty concluding the common and ordinary meaning of "wages" included non-monetary compensation. *See City of Fort Dodge*, 275 N.W.2d at 398 (McCormick, J., dissenting) ("Even the most restrictive definition of wages does not limit compensation to cash. It is one thing to say wages are usually a payment of money but quite another to say they are always a payment of money. . . . [P]ayment of wages may be made in kind rather than cash even under the ordinary definition."). Likewise, in *Professional Staff Association*, our court concluded that severance pay was not supplemental pay, in part, because "the specific listing in section 20.9 was to be restrictively applied." *Prof'l Staff Ass'n*, 373 N.W.2d at 518. As in *City of Fort*

*Dodge*, our court never considered the common and ordinary meaning of "supplemental pay." Judge Oxberger dissented, concluding that severance pay fell within even a restrictive interpretation of supplemental pay. *See Prof'l Staff Ass'n*, 373 N.W.2d at 519. While parts of our earlier decisions still have force, the definitional analysis—the first prong of the *Waterloo II* test—contained in those cases is of little value.

A greater obstacle to the District's position on appeal relates to the second legal development material to this case. The cases upon which the District relies were decided prior to the time the legislature vested interpretive authority with PERB. In those cases, we thus owed no deference to the agency's interpretation of the terms in section 20.9. *See*, *e.g.*, *Waterloo II*, 740 N.W.2d at 420 ("Whether a proposal is a mandatory subject of collective bargaining, as defined by Iowa Code § 20.9, has not been explicitly vested in PERB's discretion. Therefore, our review is for correction of errors at law."); *Charles City*, 275 N.W.2d at 769 (stating "we are not bound by Board interpretations of law and must make an independent determination of the meaning of the statute"); *City of Fort Dodge*, 275 N.W.2d at 396 (same); *Prof'l Staff Ass'n*, 373 N.W.2d at 517 (same). As previously noted, in 2010 the legislature gave PERB express authority to interpret and apply the provisions of Iowa Code chapter 20. Instead of dealing with this development directly, the District merely argues PERB's definition is overbroad and ignores forty years of precedent. Whether PERB's definition is overbroad, whether the prior cases set forth the more logical definition of "supplemental pay," and whether the prior definitions appear more consistent

with the legislature's intent in balancing management and labor rights are no longer the controlling questions. The only controlling question presented in this appeal is whether PERB's definition of "supplemental pay" is irrational, illogical, or wholly unjustifiable." *See* Iowa Code § 17A.19(10)(*l*), (m).[2] This is a deferential standard.

In conducting our analysis, we are guided by the supreme court's most recent discussion of the issue. "The topics listed in Iowa Code section 20.9 cannot be defined in a fashion so expansive that the other specifically identified subjects of mandatory bargaining become redundant, nor are the topics subject to the narrowest possible interpretation." *AFSCME Iowa Council 61*, 2014 WL 1884476, at *5. "Consistent with legislative intent, PERB must give each topic in section 20.9 its common and ordinary meaning within the structural parameters imposed by section 20.9." *Id.* PERB's decision contains seven pages of historical analysis to derive the proper principles to apply to the question whether the contract provisions fall within the definition of "supplemental pay" in Iowa Code section 20.9. The decision then contains fifteen pages of analysis regarding the common and ordinary meaning of "supplemental pay." PERB considered its own prior interpretations, relevant case law, dictionary definitions

---

[2] *Waterloo II* set forth a two-step inquiry. The first inquiry is whether the proposal falls within the definition of a mandatory topic of bargaining. *Waterloo II*, 740 N.W.2d at 429. "Once that threshold test has been met, the next inquiry is whether the proposal is preempted or inconsistent with any provision of law." *Id.* The District limited its argument to whether the proposal falls within definition of a topic of mandatory bargaining. Although a strong argument could be made PERB's interpretation so changes the nature of public employee bargaining as to be inconsistent with PERA and in violation of the second stop of *Waterloo II*, the argument was not made here and will not be considered.

of the term, definitions from other jurisdictions, and treasury regulations. In reviewing these authorities, PERB recognized that "supplemental pay" could be limited to that involving monetary compensation or could also include non-monetary compensation. PERB adopted the definition that supplemental pay included non-monetary compensation related to the employment relationship. To avoid an overly-expansive definition that rendered the other specifically identified subjects of mandatory bargaining redundant, PERB specifically excluded from its interpretation any proposal that could be subject to mandatory bargaining under any other term in section 20.9. PERB then concluded that the proposals regarding severance pay fell within this definition.

We cannot say the definition or its application to the proposals at issue is irrational, illogical, or wholly unjustifiable. PERB cites sufficient authority in support of its interpretation. In addition to the authorities cited by PERB we note Justice McCormick, in *City of Fort Dodge*, reached a similar conclusion regarding the meaning of wages—concluding that wages was commonly understood to include non-monetary forms of compensation. *See City of Fort Dodge*, 275 N.W.2d at 398. Judge Oxberger, in *Professional Staff Association*, concluded the severance pay proposal at issue in that case fell within a restrictive interpretation of "supplemental pay." *Prof'l Staff Ass'n*, 373 N.W.2d at 519. A fortiori, he would also conclude that severance pay fell within a less restrictive interpretation of the same. Given the authority cited by PERB in support of its interpretation and our own case law on the same issue, we cannot say PERB's interpretation is irrational, illogical, or wholly unjustifiable.

IV.

For the foregoing reasons, the judgment of the district court is affirmed.

**AFFIRMED.**

Vogel, P.J., concurs specially.

**VOGEL, P.J.** (concurring specially)

While I agree with the majority's reasoning, I concur specially to illustrate the consequences of our court's conclusion.

The history of mandatory subjects of collective bargaining in Iowa is illustrative. As *Waterloo II* noted:

> In PERA, the legislature declined to adopt the NLRA model on the question of what subject matters are mandatory subjects of collective bargaining. Instead of incorporating the expansive NLRA language mandating collective bargaining over wages, hours and "other terms and conditions of employment," the Iowa legislature instead specifically enumerated seventeen topics subject to collective bargaining.

740 N.W.2d at 421.

The supreme court approached the issue of whether a subject was a mandatory subject of bargaining by using a two-pronged test—first, whether a particular proposal fell within the scope of the specific terms in section 20.9, and second, whether collective bargaining over the proposal would be illegal. *See Charles City*, 275 N.W.2d at 772. However, *Charles City* struggled with balancing the terms delineated in section 20.9 with section 20.7, which set forth the exclusive rights of management. As such, the court returned to the strict two-pronged approach, that is, a topics test. *State v. Pub. Emp't Relations Bd.*, 508 N.W.2d 668, 672–75 (Iowa 1993).

*Waterloo II*, though, departed from the previous precedent's narrow interpretation of the laundry list of terms, *see City of Fort Dodge*, 275 N.W.2d at 397, and instead adopted "the common or ordinary meaning of words" approach. *Waterloo II*, 740 N.W.2d at 430. Thus, it appears *Waterloo II* overruled prior

precedent sub silentio, as well as wandered away from Iowa's more restrictive approach to mandatory subjects of collective bargaining (that is, as opposed to the NLRA's more expansive style).

The problem now, of course, is that the legislature vested authority with PERB to interpret chapter 20 in 2010. Combined with *Waterloo II*'s liberal approach to defining terms in section 20.9, PERB, as it has done in this case, is allowed to interpret terms regardless of our courts' precedent. Then, given our narrow standard of review, we are restricted from any meaningful judicial review of PERB's definition. Consequently, PERB may now determine an issue is a mandatory subject of bargaining, despite years of precedent to the contrary. Regardless of these practical issues, I agree with the majority that, given *Waterloo II* and the amended section 20.6, PERB's interpretation should be upheld and the district court affirmed.