# IN THE COURT OF APPEALS OF IOWA

No. 13-1669
Filed December 24, 2014

**BOARD OF REGENTS, STATE OF IOWA**
**and THE UNIVERSITY OF NORTHERN**
**IOWA,**
    Petitioners-Appellants,

**vs.**

**IOWA PUBLIC EMPLOYMENT RELATIONS**
**BOARD,**
    Respondent-Appellee,

**and**

**UNI-UNITED FACULTY,**
    Intervenor.
_____

        Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg,

Judge.


        Appeal from district court's ruling affirming an agency declaratory ruling.

**AFFIRMED.**


        Thomas J. Miller, Attorney General, and George A. Carroll, Assistant

Attorney General, Des Moines, for appellants.

        Ann M. Smisek, Des Moines, for appellee.

        Nathan Willems of Sole, McManus & Willems, Cedar Rapids, for

intervenor.

        Considered by Danilson, C.J., and Potterfield and McDonald, JJ.

**MCDONALD, J.**

The Board of Regents ("Regents"), State of Iowa ("State"), and the University of Northern Iowa ("UNI") (collectively, hereinafter "Employer") appeal the district court's ruling affirming the Iowa Public Employment Relations Board's (hereinafter "PERB") declaratory order under the Iowa Public Employment Relations Act (hereinafter "PERA"), Iowa Code chapter 20 (2011). The subject of the dispute is whether UNI's Retirement Incentive Program/Early Separation Incentive Program (hereinafter "ESIP") is a mandatory subject of collective bargaining.

I.

The Employer is a public employer within the meaning of PERA. *See* Iowa Code § 20.3(10) (defining "public employer"). UNI-United Faculty ("United Faculty") is the certified collective bargaining representative of a bargaining unit comprised of full-time and part-time faculty at UNI, including adjunct faculty and professional librarians with faculty status, and it is an employee organization within the meaning of PERA. *See* Iowa Code § 20.3(4) (defining "employee organization"). Labor negotiations between the Employer and United Faculty are thus subject to PERA. Although this case arises in the context of a declaratory order proceeding, the questions presented are the same or similar to those presented in disputes regarding the negotiability of proposals during collective bargaining.

The supreme court and our court recently summarized the collective bargaining process under PERA:

PERA governs collective bargaining between public employers and public employee organizations. Iowa's PERA contains both a provision establishing mandatory collective bargaining on specified matters and a contrapuntal management rights clause preserving exclusive, public management powers in traditional areas. The public management powers are found in Iowa Code section 20.7 . . . . Iowa Code section 20.9 then enumerates seventeen topics that are subject to mandatory collective bargaining procedures:

> The public employer and the employee organization shall meet at reasonable times . . . to negotiate in good faith with respect to wages, hours, vacations, insurance, holidays, leaves of absence, shift differentials, overtime compensation, supplemental pay, seniority, transfer procedures, job classifications, health and safety matters, evaluation procedures, *procedures for staff reduction*, in-service training and other matters mutually agreed upon.

Iowa Code § 20.9. This list is exclusive.

*Fort Dodge Cmty. Sch. Dist. v. Iowa Pub. Emp't Relations Bd.*, No. 13-0879, 2014 WL 5470219, at *1, ___ N.W.2d ___, ___ (Iowa Ct. App. 2014) (emphasis added) (quoting *AFSCME Iowa Council 61 v. Iowa Pub. Emp't Relations Bd.*, 846 N.W.2d 873, 878-79 (Iowa 2014)). As the supreme court previously stated:

> If a subject is within the scope of mandatory bargaining, the parties are required to bargain over the issue, and if agreement is not reached, the statutory impasse procedures, which ultimately lead to binding arbitration, are available. If, on the other hand, the proposal is a permissive subject of bargaining under section 20.9, the public employer may reserve the right to decide the issue unilaterally by declining to participate in bargaining. When the employer declines to bargain over a permissive subject, the impasse procedures in PERA are not available and decisions related to the subject remain within the exclusive power of the public employer.

*Waterloo Educ. Ass'n v. Iowa Pub. Emp't Relations Bd.*, 740 N.W.2d 418, 421-22 (Iowa 2007) ("*Waterloo II*").

On March 5, 2012, the Regents adopted a "Proposed 2012 Early Separation Incentive Program" for certain faculty at UNI:

University of Northern Iowa
Proposed 2012 Early Separation Incentive Program

The proposed ESIP does not create a right for the employee.  The request to participate in the program may not be approved if it is deemed not in the best interest of the University of Northern Iowa.  Each application will be reviewed on an individual basis and will be subject to the approval of the Executive Vice President and Provost.  Acceptance of the application shall be considered as a voluntary resignation effective on the date cited by the applicant on the application form.

The proposed program is a one-time program in which eligible employees have a defined "window" period for application.

1. Proposed Benefits:

(a) Payment of accrued sick leave, not to exceed $2000, for those who are either resigning or retiring.  For those who meet the requirements to elect retirement, having attained age 55 and applying to begin at least minimum retirement benefits, this payment is made pursuant to IA Code 70.23 [sic].

(b) Payment of one (1) year of salary based upon employee's appointment salary on the date of retirement or resignation.

(c) Cash payment equal to the value of eighteen (18) months of COBRA premium for health and dental insurance based upon their coverage contract as of March 6, 2012.

2. Eligibility - Faculty members who hold a tenured appointment as of March 6, 2012 in a program area finally identified for closure and/or restructuring by the University.

Individuals who are in their final year of phased retirement are not eligible to participate in this plan.

3. Application Requirements:

(a) Employees who meet the eligibility requirement must apply for the ESIP by April 23, 2012.  No applications will be accepted after April 23, 2012.  The decision to request such a benefit is voluntary and initiated by the employee.  Employees who elect to participate will be provided seven (7) days to revoke their election.

4. Commencement of Early Retirement:

(a) Employees must fully resign or retire no later than June 29, 2012.

5. Re-employment:

(a) Re-employment into a benefits eligible position is not permitted.

6. Backfill of Vacated Positions

(a) Restricted based upon need.

On March 12, United Faculty filed a petition for declaratory order with PERB. United Faculty sought a determination of whether paragraphs 1(a), 1(b), or 1(c) of the ESIP are mandatory topics of bargaining. The Employer intervened. In the parties' agency briefing and during oral argument, the parties characterized the question presented as "whether the ESIP, as a whole, is a procedure for staff reduction and thus a mandatory subject of bargaining." PERB addressed the question as presented by the parties, considering the ESIP as a whole. PERB determined:

> With the exception of its paragraph 6, the ESIP is a procedure, the purpose, subject, effect, and predominant characteristic of which is the reduction of bargaining unit staff. It is, in the common and ordinary as well as literal sense of the words, a procedure for staff reduction and thus a mandatory subject of bargaining.

PERB determined paragraph six did not relate to staff reduction and was not a mandatory subject of bargaining. It also considered whether paragraphs 1(a) and 1(b) fit within the section 20.9 term "wages" and whether 1(c) fit within the term "insurance" and concluded they did not.

The Employer petitioned for judicial review. At the district court, the Employer argued PERB erred in finding the predominant purpose of the ESIP was a procedure for staff reduction, PERB erred in failing to consider traditional management rights in making its determination, and the ESIP was not subject to mandatory bargaining because the ESIP was a retirement benefit. The court considered the two prongs of the test of negotiability: whether a proposal fits within the scope of a specific statutory term in section 20.9, *see Waterloo II,* 740 N.W.2d at 429, and whether the proposal is preempted by or inconsistent with

any provision of law, *see id.* The court concluded PERB's definition of "procedures for staff reduction" and determination that the predominant purpose of the ESIP was a "procedure for staff reduction," as defined, was not illogical, unreasonable, arbitrary, capricious, or an abuse of discretion. *See* Iowa Code § 17A.19(10)(i), (n). Concerning the illegality prong, the court concluded PERB's determination that a one-time severance payment is not a retirement benefit was not beyond the authority delegated to PERB and was not "an irrational, illogical, or wholly unjustifiable interpretation of a provision of law." *See* Iowa Code § 17A.19(10)(b), (i), (n). This appeal followed.

## II.

Judicial review of an agency ruling is governed by the Iowa Administrative Procedure Act ("IAPA"), Iowa Code chapter 17A. *See AFSCME Iowa Council 61*, 846 N.W.2d at 877. District courts review agency decisions in an appellate capacity. *Id.* In turn, appellate courts review district court decisions to determine whether the district court correctly applied the law. *Id.* We apply the standards set forth in the IAPA and determine whether our application of those standards produces the same result as reached by the district court. *See id.* at 878. If so, we affirm the judgment of the district court. "The burden of demonstrating . . . the invalidity of agency action is on the party asserting invalidity." Iowa Code § 17A.19(8)(a).

## III.

The Employer's primary contention on appeal is the agency "improperly expand[ed] the scope of section 20.9 in contravention of well-established

precedent." While the Employer concedes that the agency recently was vested with the authority to "interpret, apply, and administer the provisions" of PERA, *see* Iowa Code § 20.6(1), the Employer contends this authority does not authorize PERB's departure from prior decisions interpreting section 20.9. After the filing of the district court's ruling on judicial review, the supreme court and this court each published decisions regarding the deference afforded PERB's interpretation and application of section 20.9 that are dispositive of the Employer's claims in this case. *See AFSCME Iowa Council 61*, 846 N.W.2d at 879-81; *Fort Dodge Cmty. Sch. Dist.*, ___ N.W.2d at ___, 2014 WL 5470219, at *1.

*AFSCME Iowa Council 61* was the supreme court's first decision reviewing PERB's interpretation and application of section 20.9 after the legislative change granting express interpretive authority to PERB. *See* 846 N.W.2d at 876. In that case, the supreme court considered PERB's definition of the term "procedures for staff reduction." *Id.* at 881. PERB defined the term to mean "matters involving the order and manner of how a staff reduction will be carried out." *Id.* The court concluded that the agency's action must be affirmed unless the action was "irrational, illogical, or wholly unjustifiable." *Id.* at 879 (citing Iowa Code § 17A.19(10)(*l*), (m)). The court concluded "PERB's interpretation of 'procedures for staff reduction' is consistent with the plain and ordinary meaning of the phrase and is therefore not irrational, illogical, or wholly unjustifiable." *Id.* at 881.

In *Fort Dodge*, this court considered the same argument the appellants advance here—whether PERB's definition was contrary to years of precedent and thus improperly expanded the scope of section 20.9—but in the context of a dispute regarding the meaning of "supplemental pay." *See Fort Dodge*, ___ N.W.2d at ___, 2014 WL 5470219, at *3-4. We stated:

> Whether PERB's definition is overbroad, whether the prior cases set forth the more logical definition of "supplemental pay," and whether the prior definitions appear more consistent with the legislature's intent in balancing management and labor rights are no longer the controlling questions. "The only controlling question presented in this appeal is whether PERB's definition of 'supplemental pay' is irrational, illogical, or wholly unjustifiable." *See* Iowa Code § 17A.19(10)(*l*), (m). This is a deferential standard.

*Id.* at *6. We concluded, given the standard of review, PERB's interpretation was not irrational, illogical, or wholly unjustifiable. *Id.* at *7. Judge Vogel, concurring specially, noted the combination of the express grant of interpretive authority to PERB, *Waterloo II*'s "liberal approach to defining terms," and our "narrow" standard of review resulted in PERB being able to "determine an issue is a mandatory subject of bargaining, despite years of precedent to the contrary." *Id.* at *8 (Vogel, P.J., concurring specially).

Given the foregoing, we agree with the district court that PERB's definition of "procedures for staff reduction" was not beyond the authority of the agency and not irrational, illogical, or wholly unjustifiable. *See* Iowa Code § 17A.19(10)(b), (*l*). We, like the district court, conclude PERB's determination that the predominant purpose of the ESIP falls within that definition is not illogical, unreasonable, arbitrary, capricious, or an abuse of discretion. *See* Iowa Code § 17A.19(10)(i), (n). The Regents' own description of the ESIP as "a tool to

shape, redirect, and focus the faculty work force" supports PERB's determination the proposal falls within the term "procedures for staff reduction." Concerning the illegality prong, we conclude, as did the district court, PERB's determination the ESIP is a one-time severance payment, not a "proposal that directly augments or supplements" retirement benefits and thus not an illegal subject of bargaining under section 20.9 is not illogical, unreasonable, arbitrary, capricious, or an abuse of discretion. *See id.*

IV.

We have considered each of the appellants' arguments, whether set forth explicitly herein, and conclude they were thoroughly addressed by the district court and/or are without merit. For the foregoing reasons, we affirm the judgment of the district court without further opinion. *See* Iowa Ct. R. 21.26(c), (d), and (e).

**AFFIRMED.**