# IN THE COURT OF APPEALS OF IOWA

No. 15-0456
Filed February 10, 2016


**DES MOINES ASSOCIATION OF**
**PROFESSIONAL FIREFIGHTERS,**
**LOCAL NO. 4,**
    Petitioner-Appellant,

**vs.**

**PUBLIC EMPLOYMENT RELATIONS**
**BOARD,**
    Respondent-Appellee,

**and**

**CITY OF DES MOINES,**
    Intervenor-Appellee.
_____

    Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg,

Judge.

    The Des Moines Association of Professional Firefighters appeals the

district court's order affirming the Public Employee Relations Board in its review

of a prohibited practice complaint.  **AFFIRMED.**


    Charles Gribble of Parrish, Kruidenier, Dunn, Boles, Gribble, Gentry,

Brown & Bergmann, L.L.P., Des Moines, for appellant.

    Diana S. Machir, Public Employee Relations Board, Des Moines, for

appellee.

    Carol J. Moser, Deputy City Attorney, for intervenor.

    Heard by Vogel, P.J., and Vaitheswaran and Bower, JJ.

**BOWER, Judge.**

The Des Moines Association of Professional Firefighters, Local No. 4 (Local 4) appeals the district court's order affirming the Public Employee Relations Board's (PERB) review of a prohibited practice complaint (PPC). On appeal, Local 4 claims the City committed a prohibited practice by unilaterally changing the lieutenants' wages and job classifications without collective bargaining. We affirm on appeal.

## I.    BACKGROUND FACTS AND PROCEEDINGS

We incorporate the district court's summary of the factual background:

The facts in the record, as found by the Public Employment Relations Board ("PERB"), are not disputed. The City of Des Moines ("City") is a public employer within the meaning of Iowa Code § 20.3(10) [(2011)]. The Des Moines Association of Professional Fire Fighters, Local 4 ("Local 4") is certified by PERB as the exclusive bargaining representative for the bargaining unit of City employees, which among others includes fire fighters, fire lieutenants, and fire captains. The City and Local 4 are parties to a collective bargaining agreement ("CBA"). Article 26 of the CBA contained a provision about wages. This provision detailed the compensation range for fire fighters, fire lieutenants, and fire captains. Fire captains usually make about $5,500 more than fire lieutenants.

The City operates ten fire stations providing 24 hour service. The fire stations are either single-company or multi-company. A company is a group of employees who staff an apparatus, such as a fire engine or ambulance. Prior to 1989, lieutenants were in charge of single-company fire stations and captains were in charge of multi-company fire stations. In 1989, the City assigned captains to command all fire stations, both single and multi-company. Occasionally, lieutenants have been assigned to temporarily serve as acting captains if the captain was absent. Under the CBA, the lieutenant assigned as an acting captain would receive additional compensation called "acting pay."

In fall 2011, the City fire chief made a budget recommendation to return to the pre-1989 staffing assignment by having lieutenants command all single-company fire stations. In February 2012, the City Council adopted the budget

recommendation. On April 2, 2012, the first lieutenant reported for duty to permanently command a single-company fire station. These lieutenants are still paid at the lieutenant compensation level outlined in the CBA. Lieutenants at multi-company fire stations who temporarily fill in for captains are still paid the additional "acting pay."

Local 4 filed a prohibited practice complaint with PERB on June 29, 2012, arguing that the City, by assigning lieutenants to perform the duties of a captain without additional compensation, made a unilateral change that affected terms of the CBA that are mandatory subjects of bargaining. PERB found that the change did not affect a mandatory topic of bargaining, stating that:

> The changes implemented by the City on April 2, 2012 did not alter the status quo concerning job classifications. No job classification existing immediately prior to April 2 was eliminated or altered in any way. Nor was a new job classification created.

> Instead, the changes . . . plainly related to the assignment of captains and lieutenants, and the job content or duties of the lieutenants—matters not within the common and ordinary meaning of wages, job classifications or any other 20.9 topic.

On July 15, 2014, Petitioner filed this Petition for Judicial Review of PERB's June 2, 2014 ruling.

The district court affirmed PERB's decision on February 16, 2015, finding PERB used the proper analysis to determine whether the City's action involved a mandatory bargaining topic pursuant to Iowa Code section 20.9 (Scope of Negotiations). The district court found PERB's interpretations of "wages" and "job classifications" was not irrational, illogical, or wholly unjustifiable so as to require reversal. *See* Iowa Code § 17A.19(10)(m) (2013). Local 4 now appeals.

## II.    STANDARD OF REVIEW

Judicial review of an agency ruling is governed by [the Iowa Administrative Procedure Act [IAPA], Iowa Code chapter 17A]. The district court reviews the agency's decision in an appellate capacity. In turn, we review the district court's decision to determine whether it correctly applied the law. We must apply the standards set forth [in the IAPA] and determine whether our application of those

standards produces the same result as reached by the district court.

*AFSCME Iowa Council 61 v. Iowa Pub. Emp't Relations Bd.*, 846 N.W.2d 873, 877–78 (Iowa 2014) (citations omitted). If so, we affirm the judgment of the district court. *See id.*

Where, as here, the question presented is whether the agency correctly interpreted statutory text, the level of scrutiny applied during review of the agency's action depends on whether the legislature has vested the agency with interpretive authority. *Id.* "Because the legislature has now expressly vested PERB with discretion to interpret and apply chapter 20, we review PERB's interpretation and application of section 20.9 to determine if it is 'irrational, illogical, or wholly unjustifiable.'" *Id.* at 878 (quoting Iowa Code § 17A.19(10)(*l*), (m)).

> A decision is "irrational" when it is "not governed by or according to reason." Webster's Third New International Dictionary 1195. A decision is "illogical" when it is "contrary to or devoid of logic." *Id.* at 1127. A decision is "unjustifiable" when it has no foundation in fact or reason. *See id.* at 2502 (defining "unjustifiable" as "lacking in . . . justice"); *id.* at 1228 (defining "justice" as "the quality or characteristic of being just, impartial or fair"); *id.* (defining "just" as "conforming to fact and reason").

*Id.* "'The burden of demonstrating . . . the invalidity of agency action is on the party asserting invalidity.'" *Id.* (quoting Iowa Code § 17A.19(8)(a)).

## III. DISCUSSSION

Local 4 claims the City committed a prohibited practice by unilaterally changing the lieutenants' wages and job classifications without collective bargaining. Local 4 claims PERB either gave a "narrow and restrictive" meaning

to the definition of "wages" and "job classification" in order to find no unilateral change to those subjects occurred. Or, PERB made a unilateral change to the lieutenants' job classifications and wages even using PERB's narrow definition of those terms.

The Public Employee Relations Act (PERA), Iowa Code chapter 20, governs collective bargaining between public employers and public employee organizations. *See AFSCME Iowa Council 61*, 846 N.W.2d at 878. Chapter 20 provides a provision establishing mandatory collective bargaining on certain specified matters, while also providing public employers with "exclusive, public management powers in traditional areas." *Id.* (citations omitted). Iowa Code section 20.7 outlines the "rights" of public employers to:

> 1. Direct the work of its public employees.
> 2. Hire, promote, demote, transfer, assign and retain public employees in positions within the public agency.
> 3. Suspend or discharge public employees for proper cause.
> 4. Maintain the efficiency of governmental operations.
> 5. Relieve public employees from duties because of lack of work or for other legitimate reasons.
> 6. Determine and implement methods, means, assignments and personnel by which the public employer's operations are to be conducted.
> 7. Take such actions as may be necessary to carry out the mission of the public employer.
> 8. Initiate, prepare, certify and administer its budget.
> 9. Exercise all powers and duties granted to the public employer by law.

Iowa Code section 20.9 lists seventeen topics that are exclusively subject to collective bargaining procedures; this list includes employees' "job classifications" and "wages." Iowa Code section 20.10 defines a "prohibited practice." Three subsections of section 20.10 set forth conduct that can

constitute a prohibited practice, and each subsection requires that the party charged with the prohibited conduct act "willfully." Iowa Code § 20.10(1), (2), (3).

Ultimately, our question on judicial review, as framed by PERB, is: Did the City commit a prohibited practice when it changed the status quo by placing lieutenants in charge of single-company stations as permanent assignments, while continuing to pay them at the lieutenant rate, without bargaining with Local 4. A two-prong test is used to determine if a proposed change should be subjected to mandatory bargaining. *Waterloo Educ. Ass'n v. Iowa Pub. Emp't Relations Bd.*, 740 N.W.2d 418, 429 (Iowa 2007). The first prong, the threshold test, is used to determine if "a proposal fits within the scope of a specific term or terms listed by the legislature in section 20.9. Once that threshold test has been met, the next inquiry is whether the proposal is preempted or inconsistent with any provision of law." *Id.*

The PERB found the changes made by the City failed the threshold test. The PERB determined:

> Wages has come to be defined as payment for labor or services, usually based on time worked or quantity produced, or as payment for labor or services on an hourly, daily or piecework basis. *Waterloo Educ. Ass'n v. PERB*, 740 N.W.2d 418, 430 (Iowa 2007). The topic also includes fundamental aspects of wage payment, such as the time and place thereof. *Waterloo Comm. Sch. Dist. v. PERB*, 650 N.W.2d 627, 634 (Iowa 2002).
>
> The changes implemented by the City on April 2, 2012 did not alter the wages of any lieutenants or any other members of the Association-represented bargaining unit. Prior to April 2, captains were compensated at pay grade 25 and lieutenants at pay grade 23, regardless of their standing assignment. After April 2, captains continued to be compensated at pay grade 25 and lieutenants at pay grade 23. There was no change to the wage of either rank.
>
> The topic of job classifications, the Board has indicated, . . . relates to the arrangement of jobs into categories, based on

selected factors, for the primary purpose of establishing wage or salary rates. It does not relate to the assignment of employees, notification of those assignments, or the qualifications for employment (although those qualifications, i.e., "training, experience, or skill," may be the basis for the categorical arrangement of jobs). Nor does it include job content (the functions, requirements, and duties of a given job) or job description (a written record summarizing the main features or characteristics of a job, including description of duties, responsibilities, promotional opportunities, general working conditions, qualifications, materials handled, etc.). *Bettendorf Comm. Sch. Dist.*, 76 PERB 598.

The changes implemented by the City on April 2, 2012, did not alter the *status quo* concerning job classifications. No job classification existing immediately prior to April 2 was eliminated or altered in any way. Nor was a new job classification created.

Instead, the changes implemented on April 2, 2012, plainly related to the assignment of captains and lieutenants, and the job content or duties of the lieutenants—matters not within the common and ordinary meaning of wages, job classifications or any other section 20.9 topic. While these changes might reasonably be expected to precipitate bargaining proposals by [Local 4] that lieutenants assigned to lead single-company stations be compensated at a premium rate (a wage proposal) or that a new job classification for lieutenants so assigned be created (a job classification proposal), or both, such does not alter the subject matter of the changes themselves.

. . . .

Because the changes implemented by the City were not mandatory topics, it had no duty to bargain over them with the Association and their implementation was not a prohibited practice within the meaning of Iowa Code sections 20.10(1) or 20.10(2)(a), (e) or (f), as alleged in the [Local 4's] complaint.

We agree with the district court's conclusion the PERB's decision was not the result of an interpretation or application of a statute that was irrational, illogical, or wholly unjustifiable. *See* Iowa Code § 17A.19(10)(*l*), (m). We affirm.

**AFFIRMED.**