# IN THE COURT OF APPEALS OF IOWA

No. 15-1045
Filed June 15, 2016


**AFSCME IOWA COUNCIL 61,**
       Petitioner-Appellant,

**vs.**

**IOWA PUBLIC EMPLOYMENT
RELATIONS BOARD,**
       Respondent-Appellee.

_____


Appeal from the Iowa District Court for Polk County, Dustria A. Relph,

Judge.


AFSCME appeals the dismissal of its prohibited practice complaint.

**AFFIRMED.**


Mark T. Hedberg and Sarah M. Wolfe of Hedberg & Boulton, P.C., Des

Moines, for appellant.

Diana S. Machir of Iowa Public Employee Relations Board, Des Moines,

for appellee.



Considered by Vogel, P.J., and Doyle and Bower, JJ.

**BOWER, Judge.**

AFSCME Iowa Council 61 (ASFCME)[1] appeals the Iowa Public Employee

Relation Board's (PERB) dismissal of its prohibited practice complaint claiming

PERB's decision was based upon an irrational, illogical, or wholly unjustifiable

interpretation of law. We disagree and affirm PERB's dismissal.

## I. BACKGROUND FACTS AND PROCEEDINGS

We adopt the district court' summation of the factual background:

> AFSCME filed a prohibited practices complaint against the State of Iowa, Department of Corrections (hereinafter State) in February, 2012, alleging that the Department of Corrections (hereinafter DOC) violated certain provisions of Iowa Code Chapter 20 when they denied AFSCME members the right to wear union pins depicting a photo of Governor Branstad with the universal red "no" symbol across it, and the phrases "1991 or 2011" written across the top and "NOTHING HAS CHANGED" written across the bottom of the pin. There is nothing on the pin that makes it clear to the public that the pin is an ASFCME union pin.
> In a March, 2014 ruling, an administrative law judge of PERB found that the DOC's prohibition of the pins was a prohibited practice in violation of Iowa Code Section 20.10(2)(a) (2011). The State appealed.
> In its October, 2014 decision, the Public Employee Relations Board concluded that "special circumstances" existed in this situation which warranted the DOC's ban of the pins. Based upon that finding, PERB reversed the ALJ's decision that the State committed a prohibited practice in violation of Iowa Code Section 20.10(2)(a).

The district court issued a ruling in June 2015, affirming PERB's dismissal

of AFSCME's prohibited practices complaint. AFSCME now appeals.

## II. STANDARD AND SCOPE OF REVIEW

> Judicial review of an agency ruling is governed by [the Iowa Administrative Procedure Act [IAPA], Iowa Code chapter 17A]. The district court reviews the agency's decision in an appellate capacity.

---

[1] AFSCME is an acronym for the American Federation of State, County, and Municipal Employees.

In turn, we review the district court's decision to determine whether it correctly applied the law. We must apply the standards set forth [in the IAPA] and determine whether our application of those standards produces the same result as reached by the district court.

*AFSCME Iowa Council 61 v. Iowa Pub. Emp't Relations Bd.*, 846 N.W.2d 873, 877–78 (Iowa 2014) (citations omitted). If so, we affirm the judgment of the district court. *See id.*

PERB notes ASFCME has failed to designate which section of 17A.19(10), grounds for judicial relief, apply in this appeal. While ASFCME claims PERB incorrectly interpreted the law, ASFCME's argument consists of attempts to demonstrate PERB incorrectly applied the law to the facts in this case. Therefore, we will focus our review on PERB's application of law to fact. *See* Iowa Code § 17A.19(10)(m). Even if we also applied section 17A.19(10)(*l*) (interpretation of law), given ASFCME's heavy burden, we would reach the same conclusion and affirm PERB's dismissal.

"Because the legislature has now expressly vested PERB with discretion to apply chapter 20, we review PERB's . . . application of section 20.8 to determine if the ruling is 'irrational, illogical, or wholly unjustifiable.'" *AFSCME Iowa Council*, 846 N.W.2d at 878 (quoting Iowa Code § 17A.19(10)(m)).

A decision is "irrational" when it is "not governed by or according to reason." Webster's Third New International Dictionary 1195. A decision is "illogical" when it is "contrary to or devoid of logic." *Id.* at 1127. A decision is "unjustifiable" when it has no foundation in fact or reason. *See id.* at 2502 (defining "unjustifiable" as "lacking in . . . justice"); *id.* at 1228 (defining "justice" as "the quality or characteristic of being just, impartial or fair"); *id.* (defining "just" as "conforming to fact and reason").

*Id.* "'The burden of demonstrating . . . the invalidity of agency action is on the party asserting invalidity.'" *Id.* (quoting Iowa Code § 17A.19(8)(a)).

## III.   ANALYSIS

ASFCME claims PERB's decision to apply the "special circumstance" exception to prohibit DOC employees from wearing the pin was based on an irrational, illogical or wholly unjustifiable interpretation of law. *See United States Dep't of Justice v. Fed. Labor Relations Auth.*, 955 F.2d 998, 1003–004 (5th Cir. 1992) (defining the "special circumstances test" as "widely applied" by the National Labor Relations Board).

On this issue, the district court reasoned:

> It is not disputed that union members have a statutory right to wear union insignia under Iowa Code § 20.8(3).  It is also not disputed that an exception to this right exists for special circumstances.  Special circumstances that have been long-recognized as justification for employer infringement upon this right include where prohibition of an activity is necessary in order to maintain discipline and ensure safety. *Republic Aviation Corp. v. N.L.R.B.*, 324 U.S. 793, 803 n.10 (1945).
>
> In this case, at least two union staff members at the Iowa Medical and Classification Center complained to their warden that they found the pins offensive.  Subsequently, the DOC banned the pins because they were deemed disrespectful, did not display appropriate behavior, did not comport with the responsibility of the DOC to model prosocial behavior to offenders, and were in violation of DOC policies.  These include policies requiring employees to conduct themselves in a professional manner which creates and maintains respect for the DOC and to avoid action that might adversely affect confidence in the criminal justice system.  DOC representatives testified that the pins herein were disrespectful to Governor Branstad, who is at the top of the DOC's chain of command, and viewed them as an attack on the DOC from the top down.
>
> The work environment in the present matter is unlike any other.  DOC employees are responsible for the housing, care, rehabilitation, and 24 hour supervision of criminal offenders whose offenses were deemed serious enough to warrant imprisonment.  The volatile nature of the prison setting presents unique needs

which require a very high level of control and consistency to avoid disruption. Maintenance of control and avoidance of disruption in the prison environment are paramount to the safety of both employees and offenders. If there is any place where it is necessary to maintain discipline, it would be in a prison. Internal security within a correctional facility is central to all other corrections goals. *Pell v. Procunier*, 417 U.S. 817, 822–23 (1974). Though the need to maintain discipline and ensure safety would typically apply to employees, it is reasonable and necessary, within the DOC, to extend that need to the offenders under the employees' supervision, as well.

These enhanced needs for control and consistency, along with the "paramilitary structure" of the Department of Corrections were significant factors contributing to PERB's finding that special circumstances exist in this case. This court finds substantial evidence, as defined above, exists to support that finding.

This court further agrees that, given the volatile environment of a prison, the DOC should not be required to wait until correctional staff or inmate safety is actually jeopardized through actual workplace disruption to prove special circumstances. Workplace disruption within the DOC would undermine offender confidence not only in the DOC, but also in the criminal justice system. Disruption and disorder within a prison, be it amongst staff or otherwise, could provide an excuse for negative, if not dangerous, offender behaviors. Given the unique work environment in this situation, this court agrees that there is sufficient evidence to support a need for immediate action rather than require the DOC to wait until a potentially dangerous situation develops.

We agree with the district court's reasoning. AFSCME has been unable to carry its heavy burden and prove PERB's decision was "[b]ased upon an irrational, illogical, or wholly unjustifiable application of law to fact." Iowa Code § 17A.19(10)(m). We affirm PERB's dismissal of AFSCME's prohibited practice complaint.

**AFFIRMED.**