# IN THE COURT OF APPEALS OF IOWA

No. 22-2049
Filed February 7, 2024

**SUNNY SANDRY,**
Plaintiff-Appellant,

**vs.**

**IOWA PUBLIC EMPLOYMENT RELATIONS BOARD,**
Defendant-Appellee,

**and**

**IOWA DEPARTMENT OF ADMINISTRATIVE SERVICES,**
Intervenor.
_____

Appeal from the Iowa District Court for Polk County, David Nelmark, Judge.

An employee challenges the district court's decision on judicial review affirming the ruling of the Iowa Public Employment Relations Board that there was just cause for terminating her employment. **AFFIRMED.**

Charles Gribble and Christopher Stewart of Gribble Boles Stewart & Witosky, Des Moines, for appellant.

Brenna Bird, Attorney General, and John R. Lundquist, Assistant Attorney General, for appellee Iowa Public Employment Relations Board.

Brenna Bird, Attorney General, and David M. Ranscht, Assistant Attorney General, for intervenor Iowa Department of Administrative Services.

Considered by Greer, P.J., and Schumacher and Ahlers, JJ.

**GREER, Presiding Judge.**

Sunny Sandry appeals the district court's decision on judicial review affirming the ruling of the Iowa Public Employment Relations Board (PERB) finding just cause for her termination from employment with the Iowa Department of Transportation (DOT). She asserts that the district court used an incorrect standard of review or, in the alternative, the DOT did not present clear and convincing evidence to establish just cause for her termination. Sandry also contends that PERB waived its right to challenge her appeal by failing to file a brief of its own and instead only joining the appellate brief of the intervenor, the Iowa Department of Administrative Services (DAS). We find that the district court applied the correct standard of review and that, after giving deference to PERB's application of law to fact, PERB did not act irrationally, illogically, or wholly unjustifiably in finding there was substantial evidence to support just cause for Sandry's termination. As the appellee, PERB's joinder in the DAS brief is not a waiver of its arguments on appeal. Therefore, we affirm.

**I. Background Facts and Prior Proceedings.**

Sandry began working for the DOT as a driver's license clerk—senior in 2010. DOT employees are state employees covered by the merit system. *See* Iowa Code § 8A.415(2) (2010). Part of Sandry's duties in that role required issuing licenses, conducting driving tests, collecting payments for fines and fees, and maintaining a cash till at her workstation. The drawer containing the cash till had space for other items to rest next to the cash till; the cash till itself did not fill the entire drawer. One of the clerks was responsible for counting the cash in the till at the end of each day and reconciling the money in the till with the amount of money

received from transactions with the clerk assigned to that cash till. After reconciling the cash tills, that clerk would deposit the money in the bank.

Sandry signed that she received a copy of the employee handbook and state policies in August 2010. The DOT work rules listed as sufficient grounds for disciplinary action (1) abuse or misuse of government property or for personal benefit; (2) stealing, unauthorized possession, or use of government property; and (3) unethical behavior or conduct unbecoming of a state employee. Sandry had a previous violation of DOT policy: in September 2017, the DOT placed Sandry on a one-day suspension for taking twenty dollars from a DOT money bag for personal use. Her supervisor also instructed Sandry to keep her purse in a separate drawer from the drawer containing the cash till after a coworker reported that Sandry had taken surrendered driver's licenses from customers and placed them in her purse.

On the morning of August 9, 2018, Sandry was working. Security camera footage from the DOT showed Sandry open the drawer with the cash till, turn away from the drawer toward her cell phone, remove a bill from the drawer, roll the bill down by her side, and place the bill under her cell phone before getting up and walking away from the area. Sandry's purse was in a separate drawer in her desk on the far left side of the workstation; the cash till was in a drawer to the immediate right of the workstation. An employee relations officer watching the security footage live reported Sandry's actions to the lead employee relations officer who then contacted her director. During the investigation stage, the three decided to place Sandry on administrative leave.

After getting that direction, that same afternoon Sandry's supervisor came to the DOT office to speak with Sandry and inform her that she was placed on

administrative leave; the supervisor was scheduled to be on vacation and not in the office that day. Seeing her supervisor there, Sandry asked, "What the heck are you doing here?" After the exchange, security camera footage showed Sandry take her purse from the far left side of her workstation, walk out of camera view, return to camera view without her purse, dig through her back pants pocket, remove a cash bill from on top of her chair, and place the bill back in the cash till in the area of the DOT's money—not the open space to the side. Sandry spent several seconds with her hands over the cash till, flattening the bill before returning it. The open space next to the cash till remained in view throughout the footage; Sandry is not seen placing anything in that open space, and no items are visible in that area.

Sandry's supervisor called Sandry into her office and asked Sandry to bring her cash till with her. The supervisor then handed Sandry a letter of suspension and asked that Sandry leave the office. The letter asserted three grounds for Sandry's suspension: misuse of government property or use of government property for personal benefit, stealing government property, and unethical behavior or conduct unbecoming of a state employee.[1] The letter also explained: "These rules were violated August 9, 2018 when you took state money from the state-issued cash drawer and then only returned it after your supervisor arrived unexpectedly several hours later." Later that day, after Sandry left, the cash till was reconciled and it was discovered that no money was missing. The cash till was also reconciled at the close of the day, and again no money was found

---

[1] This last ground related to behavior on a different date and is unrelated to our issues here.

missing. None of Sandry's personal items were found left in the drawer. The employee relations officer watched security camera footage from Sandry's previous four working days and did not see Sandry place personal items or money in the drawer on those days.

Later in the month, Sandry was called in for an interview and shown the security camera footage from August 9—from both the morning and early afternoon. But as the video began and before they shared the full footage with Sandry, she made the comment, "I know what I did. I made change. I know exactly what I did." Then, as Sandry viewed the footage during the interview, she said that she kept her personal money in the side of the cash till drawer and only removed that money. When pressed, she could not say what denomination of bill she kept in the drawer or took from it. Instead, Sandry maintained that she was just making change for personal use and was putting her personal money back into the drawer alongside the cash till. At times she changed her story to insist that she could not remember what happened: "it all went to a blur, but I have no—no, I don't remember. Not a clue. Not a clue." At a second interview in September to finalize the investigation, when asked why she did not keep her money in her purse, Sandry said "should have, could have, would have. It doesn't matter. I don't know." She also claimed that she may have put her personal money in the drawer on August 9 or on another day and that clerks often have to switch workstations. Yet, the video footage from the four days before the incident did not confirm Sandry's version. Likewise, Sandry could not explain why, after her supervisor arrived, she took her purse out of the bottom filing cabinet drawer and left her work area, even though she was not on break.

Sandry received notice of her termination in October, and the termination became effective the same month. At the meeting prior to the termination becoming effective, when Sandry was presented an opportunity to explain why the DOT should not terminate her employment, she answered "[b]ecause the money wasn't off, and I didn't steal, period." Sandry filed a grievance challenging the termination. On the grievance form she defined the issue involved as: "I was discharged without just cause for workplace violations." In November, DAS issued a state employee grievance answer, concluding there was just cause for the DOT to terminate Sandry's employment because the DOT had provided sufficient notice of the rule violations, conducted a full and complete investigation, obtained substantial proof of the rule violations, and provided notice of the penalty—so, termination of Sandry's employment was reasonable. After that denial, Sandry appealed her termination to PERB the same month. *See* Iowa Code § 8A.415(2) (2018) (outlining grievance and discipline resolution procedures). On the appeal form she wrote, "I did not do what I'm accused of and there has not been any proof that I committed a work rule violation."

An administrative law judge (ALJ) conducted a hearing on the appeal in August 2020. The ALJ viewed the video footage and heard testimony. Sandry testified, along with several DOT employees: the director of the bureau for driver and identification service and the employee relations officer for the DOT, who were both involved in the investigation, and a facial recognition analyst from the DOT Bureau of Investigation and Identity Protection. At the hearing, the employee relations officer testified that the September 2017 discipline, which took place nearly one year before the current discipline, involved Sandry coming in to turn

over twenty dollars and stating that the DOT's money bag would be short twenty dollars without it. When asked for an explanation of why she had twenty dollars from the DOT's money bag, Sandry said that she was making change from her personal money. The director added that although there was no policy against it, it would have been inappropriate for Sandry to keep her personal money in the same drawer as the cash till.

In a June 2021 proposed decision and order, the ALJ upheld the termination, finding that the State demonstrated just cause for terminating Sandry's employment. The ALJ specifically noted that Sandry's inability to remember what happened on August 9 was suspect, especially after Sandry reviewed the security camera footage with her supervisor. In contrast, because it seemed Sandry's memories significantly improved from the time of her interviews after the incident to the time of the hearing and were inconsistent, the ALJ gave Sandry's testimony limited weight in reaching his conclusion. The ALJ ultimately concluded the State met its burden because "[a]lthough the record is absent of direct evidence establishing the money Sandry took belonged to the State, circumstantial evidence leaves no serious doubt that it did." Sandry requested that PERB review the proposed decision, and, after a hearing in February 2022, in March 2022 PERB adopted the ALJ's findings of fact and ultimate conclusions of law as its own and dismissed Sandry's appeal.

Sandry filed a petition for judicial review in April. In the petition, she requested relief under Iowa Code section 17.19(10)(c), (d), (f), (h), (m), and (n) (2022). In her brief in support of her petition, she argued for relief only under Iowa Code section 17A.19(10)(c). That same month, DAS moved to intervene, and

when neither Sandry nor PERB resisted, the district court granted the motion. In September, PERB filed a notice of concurrence with the DAS brief and stated that it did "not intend to file a brief or further participate in this matter unless requested to do so by the court."

The district court held a hearing on Sandry's petition in October 2022. At the hearing, Sandry argued that the State must meet the just cause standard in Iowa Code chapter 8A but failed to do so. Alternatively, she contended that no matter what test was applied, she did not believe "there's sufficient evidence to establish that [she] removed any money from the State, other than speculation on the part of the State." To counter the issue over PERB's decision to not file its own brief, counsel for PERB explained that while PERB reviews proposed decisions of ALJs and also prepares and files the record on judicial review, it "is not a real party in interest, necessarily." Instead, PERB maintained, its role in employee grievance actions is adjudicatory. Counsel for DAS also appeared at the hearing and argued that the DOT presented clear and convincing evidence that there was just cause for Sandry's termination. Sandry argued in response that PERB had no interpretive authority so the district court should review the case with "much more discretion" and, under that standard, would have to find that there was not clear and convincing evidence to support the ruling.

In November 2022, the district court ruled on Sandry's petition for judicial review, affirming the decision of PERB upholding her termination from employment with the DOT. In doing so, the district court found that Sandry's behavior in removing the bill from the drawer, holding her hand low, rolling the bill, and then hiding it behind her cell phone supported the ALJ's finding that the bill was DOT

property. The district court found the same of Sandry unfolding a bill before placing that unfolded bill back into the drawer and Sandry's inability to remember what happened on August 9, even after reviewing the security camera footage. All in all, the district court "conclude[d] that there is substantial evidence in the record supporting the decision of PERB that there was clear and convincing evidence to establish just cause for Ms. Sandry's termination" and that the "decision was not irrational, illogical, or wholly unjustifiable, or otherwise unreasonable, arbitrary, capricious, or an abuse of discretion in any way." Lastly, the district court found that PERB did not waive its right to challenge the appeal when it did not file its own responsive brief. Sandry now appeals.[2]

**II. Standard of Review.**

Judicial review of an agency ruling is governed by the Iowa Administrative Procedure Act, Iowa Code chapter 17A. *See AFSCME Iowa Council 61 v. Iowa Pub. Emp. Rels. Bd.*, 846 N.W.2d 873, 877 (Iowa 2014). District courts review agency decisions in an appellate capacity. *Id.* In turn, appellate courts review district court decisions to determine whether the district court correctly applied the law to the facts. *Id.* We apply the standards set forth in the Iowa Administrative Procedure Act and determine whether our application of those standards produces the same result as that reached by the district court. *Id.* at 878. If we reach the same result, we affirm the judgment of the district court. *Mike Brooks, Inc. v. House*, 843 N.W.2d 885, 889 (Iowa 2014). However, "[p]ursuant to Iowa Code section 17A.19(10), [we] must reverse agency action when any one of several

---

[2] PERB joined the appellate brief filed by DAS.

enumerated circumstances [in Iowa Code chapter 17A.19(10)] exists and 'substantial rights of the person seeking judicial relief have been prejudiced' as a result." *Mosher v. Dep't of Inspections & Appeals*, 671 N.W.2d 501, 508 (Iowa 2003) (quoting Iowa Code § 17A.19(10)). "The burden of demonstrating . . . the invalidity of agency action is on the party asserting invalidity." Iowa Code § 17A.19(8)(a).

## III. Analysis.

Sandry raises three issues on appeal: (1) the district court should have conducted an expanded review of the agency action under section 17A.19(10)(c) and provided its own interpretation of just cause under the statute, rather than conducting a review of the agency's interpretation under an irrational, illogical, or wholly unjustifiable standard;[3] (2) the State failed to establish just cause for Sandry's termination because the proof was insufficient; and (3) by joining in DAS's brief before our court, PERB waived its right to challenge the merits of Sandry's appeal.

---

[3] There are two standards in contention here under section 17A.19(10):

> The court may affirm the agency action or remand to the agency for further proceedings. The court shall reverse, modify, or grant other appropriate relief from agency action, equitable or legal and including declaratory relief, if it determines that substantial rights of the person seeking judicial relief have been prejudiced because the agency action is any of the following:
>
> . . . .
>
> c. Based upon an erroneous interpretation of a provision of law whose interpretation has not clearly been vested by a provision of law in the discretion of the agency.
>
> . . . .
>
> m. Based upon an irrational, illogical, or wholly unjustifiable application of law to fact that has clearly been vested by a provision of law in the discretion of the agency.

Iowa Code § 17A.19(10)(c), (m).

**A. Standard of Review for Just Cause Determination.**

"In determining the proper standard of review, we must first identify the nature of the claimed basis for reversal of the [agency's] decision." *Lakeside Casino v. Blue*, 743 N.W.2d 169, 173 (Iowa 2007). "The standard of review differs depending on the error alleged." *Env't L. & Pol'y Ctr. v. Iowa Utils. Bd.*, 989 N.W2d 775, 781 (Iowa 2023). If the challenge is to an agency's interpretation of a statute, the standard of review depends on whether our legislature clearly vested the agency with authority to interpret the relevant statute. *Id.* at 781. "If the legislature has not clearly vested the interpretation of the statute at issue with the agency, we are free to substitute our judgment de novo for the agency's interpretation and determine if the interpretation is erroneous." *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 589–90 (Iowa 2004) (citing Iowa Code § 17A.19(10)(c)). "If, however, the legislature has clearly vested the interpretation of the statute at issue with the agency, we will only reverse the agency's interpretation if it is 'based upon an irrational, illogical, or wholly unjustifiable' interpretation of the statute at issue." *Id.* at 590; *see* Iowa Code § 17A.19(10)(m). The "irrational, illogical, or wholly unjustifiable" interpretation is "a highly deferential standard of review." *Env't L. & Pol'y Ctr.*, 989 N.W.2d at 781.

Iowa Code chapter 20, the Iowa Public Employment Relations Act (PERA), is the enabling statute for PERB. *See* Iowa Code §§ 20.2 (2018) (titling the chapter the "Public Employment Relations Act"); .5 (covering PERB); *see also Waterloo Educ. Ass'n v. Iowa Pub. Emp. Rels. Bd.*, 740 N.W.2d 418, 420–21 (Iowa 2007) (describing the history of PERA and PERB). In 2017, the Iowa legislature removed the words "interpret, apply" from section 20.6(1), 2017 Iowa Acts ch. 2, § 2 (codified

in Iowa Code § 20.6(1) (2018)), leaving only that PERB "shall . . . [a]dminister the provisions of this chapter." Iowa Code § 20.6(1).; *see also City of Ames v. Iowa Pub. Emp. Rels. Bd*, 986 N.W.2d 384, 385 (Iowa 2023) (stating that "[t]he Iowa legislature amended Iowa Code chapter 20 in 2017"). In reviewing this change to PERA, our supreme court stated that the amendments to PERA removed PERB's interpretive authority, as "[t]he enabling statute no longer expressly vests interpretative discretion in PERB." *United Elec., Radio & Mach. Workers of Am. v. Iowa Pub. Emp. Rels. Bd.*, 928 N.W.2d 101, 108 (Iowa 2019); *see also City of Ames*, 986 N.W.2d at 388. Therefore, because the legislature did not vest the interpretation of PERA with PERB, "[w]e review interpretations of [PERA] for correction of errors at law without deference to PERB's interpretation." *City of Ames*, 986 N.W.2d at 387–88. Correction of errors at law is the standard of review set out in Iowa Code section 17A.19(10)(c).

On the other hand, Iowa Code chapter 8A.415(2)(b)—containing discharge, suspension, or reduction in job classification as well as grievance and discipline resolution procedures—governs PERB's discipline review and contains the "just cause" standard for terminations. Chapter 8A vests the agency's application of law to the facts within the discretion of the agency. *Krogman v. Iowa Pub. Emp. Rels. Bd.*, No. 22-0043, 2023 WL 1812835, at *4 (Iowa Ct. App. Feb. 8, 2023); *Kuhn v. Pub. Emp. Rels. Bd.*, No. 07-0096, 2007 WL 4191987, at *1 (Iowa Ct. App. Nov. 29, 2007). The standard of review for interpretations clearly vested with the agency is set out in Iowa Code section 17A.19(10)(m)—whether the agency's application of law to fact was irrational, illogical, or wholly unjustifiable.

At its core, this case comes down to whether there was clear and convincing evidence of just cause for Sandry's termination. As such, PERB had to apply that law to the facts developed. In her petition for judicial review, Sandry requested relief on six grounds involving section 17A.19(10)(c), (d), (f), (g), (h), (m) and (n). In her written argument to the district court, Sandry focused on a claim that "under the legal standard of just cause, which the State has the obligation to prove, the employer must show sufficient evidence of the violation alleged, here stealing" and that the "State lacks any evidence" to prove a theft of money. Sandry refined her argument that only section 17A.19(10)(c) applies and that the district court erred by using the standard under section 17A.19(10)(m).

We note that many of Sandry's issues mirror those in *Krogman*. *See* 2023 WL 1812835, at *3. Yet, Sandry urges that any reliance on *Krogman* is misplaced because that decision is "clearly in error." In *Krogman,* a panel of this court said PERB had authority to interpret the just cause standard and found it appropriate that the district court analyzed if the PERB decision was "an irrational, illogical, or wholly unjustifiable application of law to the fact that has clearly been vested by a provision of law in the discretion of the agency." *Id.* at *2. As noted, the standard of review depends upon the nature of the claimed basis for reversal—here, good cause for the termination. *See Jacobson Transp. Co. v. Harris*, 778 N.W.2d 192, 196 (Iowa 2010).

We find, like the district court, that PERB's only legal interpretation was applying the term "just cause" to the facts. Sandry has not convinced us that the case turns on an interpretation of some provision of PERB's enabling act, found in chapter 20. Most telling, Sandry repeatedly based her argument throughout these

proceedings on a lack of proof of just cause. Recently, we have found that when an employee relies on a just cause argument, they are looking to chapter 8A and not 20. *Krogman*, 2023 WL 1812835, at *3 n.5 (explaining that the "appeal, however, does not involve chapter 20 and we do not find a discussion of chapter 20 to be relevant"); *see also* Iowa Code § 8A.415(2)(b) (establishing PERB's role in determining if an action over grievance and discipline resolution constitutes just cause). Therefore, because PERB was applying chapter 8A to determine whether just cause existed to terminate Sandry, the appropriate standard of review is 17A.19(10)(m), which required the application of law to fact. *See Lakeside Casino*, 743 N.W.2d at 173 (providing the court may reverse only if the workers' compensation commissioner's application of the law to fact was "irrational, illogical, or wholly unjustifiable").

**B. Lack of Just Cause for Termination.**

Turning to Sandry's second argument on appeal, we review the district court's ruling that the PERB decision was not irrational, illogical, or wholly unjustifiable. In describing the standard of review in section 17A.19(10)(m), our supreme court explained that "[a] decision is 'irrational' when it is 'not governed by or according to reason.' A decision is 'illogical' when it is 'contrary to or devoid of logic.' A decision is 'unjustifiable' when it has no foundation in fact or reason." *AFSCME Iowa Council 61*, 846 N.W.2d at 878 (citation omitted).

Under the just cause standard, an employee may be discharged from agency employment. Iowa Admin. Code r. 11-60.2(4). The agency may discharge an employee for several enumerated reasons including "[f]ailure to perform assigned duties," "[d]ishonesty," or "[a]ny other good cause for discharge,

suspension, or reduction." Iowa Code § 8A.413(19). The agency discharging the employee must "inform the employee during a face-to-face meeting of the impending discharge and the reasons for the discharge, and at that time the employee shall have the opportunity to respond." Iowa Admin. Code r. 11-60.2(4). The employee must also receive a written explanation of the agency's reasons for the employee's discharge within twenty-four hours of the employee's discharge date. *Id.* "[A]pplication of the just cause standard is fact-specific." *Kuhn*, 2007 WL 4191987, at *1.

Application of the just cause standard is not irrational, illogical, or unjustifiable when it is supported by substantial evidence. *See Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 256 (Iowa 2012) ("If an agency has been clearly vested with the authority to make factual findings on a particular issue, then a reviewing court can only disturb those factual findings if they are 'not supported by substantial evidence in the record . . . .'" (quoting Iowa Code § 17A.19(10)(f))). "'Substantial evidence' means the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1). "Evidence is not insubstantial merely because different conclusions may be drawn from the evidence." *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011). On appeal, our task "is not to determine whether the evidence supports a different finding; rather, our task is to determine whether substantial evidence . . . supports the findings actually made." *Id.*

Here, we find that substantial evidence supports PERB's finding that Sandry removed and then replaced money that belonged to the DOT, and therefore its ruling affirming her termination from employment was not irrational, illogical, or unjustifiable. Even without evidence of what denomination of bill Sandry took from the drawer containing the cash till, there was substantial evidence in the form of the surveillance video and Sandry's statements at the investigative interviews and the hearing that Sandry took at least one bill. There was also substantial evidence to support a finding that Sandry's explanation that she was merely making change for her personal money from the drawer containing the cash till was not truthful. Because the agency made credibility findings, we give deference to those findings. *See Lange v. Iowa Dep't of Revenue*, 710 N.W.2d 242, 247 (Iowa 2006) (noting that in judicial review matters, the court gives "deference to the credibility determinations of the presiding officer").

As the record supported, Sandry had her purse in a separate area from the cash till and was aware of the work rules because she had already been disciplined for taking twenty dollars from the DOT. Sandry stated that she had her cell phone and lip gloss in the area to the side of the cash till, but in the videos that area appears empty; Sandry's cell phone is sitting on her desk or is in her hands. Similarly, Sandry did not explain why she would keep loose bills of her personal money next to the money belonging to the DOT, knowing that being seen removing any money from that area would raise concern and that clerks sometimes traded stations. And Sandry placed money back into the drawer immediately after her supervisor showed up unexpectedly. Lastly, Sandry's supervisor did not find any of Sandry's personal items left in the drawer at the end of the day, nor did the

employee relations officer see Sandry placing her personal items in the drawer with the cash till during her four shifts prior to August 9. This evidence, combined with her changing and inconsistent statements, provides clear and convincing evidence supporting the finding that the money Sandry removed from the drawer belonged to the DOT, and the DOT had just cause to terminate her employment for doing so. Thus, the PERB decision was not based upon an irrational, illogical, or wholly unjustifiable application of law to fact.

### C. Waiver of Challenge to Appeal.

An appellee is not required to submit a brief on appeal. Iowa Rs. App. Proc. 6.903(3) ("The appellee shall file a brief or a statement waiving the appellee's brief."), 6.901(1)(b) (referring to the time for filing of a proof brief or "a written statement under rule 6.903(3) waiving the brief"). Our supreme court has stated explicitly when detailing these rules: "[o]ur rules provide that an appellee need not even file a brief in our court." *King v. State*, 818 N.W.2d 1, 12 (Iowa 2012). To begin, we note PERB joined in the arguments advanced by DAS, both before the district court, serving in an appellate function, and here, on appeal to this court.

The cases relied on by Sandry in support of her assertion to the contrary—that an appellee who fails to submit a brief waives their arguments—all concern waiver of arguments by *appellants. See Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) (finding that the appellant failed to preserve error by not including an argument in its brief); *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 184 (Iowa 1980) (determining that the appellant's brief was so indefinite as to preclude the court's consideration); *Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974) (dismissing an appeal because the appellant failed "to cite or mention

a single authority"). While the appellant must file a brief, that requirement only applies to appellants. *King*, 818 N.W.2d at 12 (citing Iowa R. App. Proc. 6.903(2)). Furthermore, the burden of proof that PERB's actions were improper rested on Sandry, the appellant. *See* Iowa Code § 17A.19(8)(a). Sandry's waiver argument fails.

**IV. Conclusion.**

The appropriate standard of review for a determination that just cause supported an employee's termination from employment is Iowa Code 17A.19(10)(m)—whether the agency's application of law to fact was irrational, illogical, or wholly unjustifiable. Applying that standard of review here, we find that substantial evidence supported PERB's ruling there was just cause for Sandry's termination from employment at the DOT because surveillance video footage showed Sandry taking money from the drawer containing the DOT's cash till, and the agency could have discredited Sandry's explanation that the money was actually hers. PERB, as appellee, did not waive its right to challenge the appeal by choosing not to file its own appellate brief. We affirm.

**AFFIRMED.**